

FILED

SEP 2 0 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**ANTHONY DARNELL GRAHAM,**

     **Petitioner,**

v.               **CRIMINAL NO. 4:19-cr-22**

**UNITED STATES OF AMERICA,**

     **Respondent.**

### *MEMORANDUM OPINION & ORDER*

Before the Court is Anthony Darnell Graham's ("Petitioner") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Pet'r's Mot. Compassion. Release, ECF No. 43 ("Pet'r's Mot."). The Government opposed the motion and Petitioner replied. Gov't Resp. Opp. to Pet'r's Mot. Compassion. Release, ECF No. 44 ("Resp. Opp."); Pet'r's Reply to Gov't Resp. Opp. to Pet'r's Mot. Compassion. Release, ECF No. 46 ("Pet'r's Reply"). This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED.**

### I. FACTUAL AND PROCEDURAL HISTORY

On March 12, 2019, Petitioner was charged in a three-count Indictment. Indict., ECF No. 1 ("Indictment"). The Petitioner was also cited with Criminal Forfeiture pursuant to 21 U.S.C. § 853 and 28 U.S.C. § 2461. *Id.* On June 3, 2019, Petitioner pled guilty to Count One, Distribution of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), of the Indictment. *See* Plea Agreement, ECF No. 15; Order Acc'g Plea of Guilty, ECF No. 17. As part of the sentence imposed with the Plea Agreement, Petitioner agreed to forfeiture all interests in any drug related and money laundering-related asset that he owned. *Id.* According to the Presentence Investigation Report, on June 22, 2018, law enforcement supervised a confidential informant who received a quantity of cocaine from Petitioner in exchange for money. Present. Investig. Rep., ECF No. 35 at ¶4. ("PSR").

1

The PSR included documentation from the Western Tidewater Regional Jail, which noted that Petitioner was diagnosed with hypertension and treated for high blood pressure. *Id.* at ¶ 62. Petitioner reported that he has previously been diagnosed with mild scoliosis. *Id.* Petitioner also reported a history of drug addiction and abuse with marijuana and cocaine. *Id.* at ¶ 65. Further, he reported using Percocet once without a prescription. *Id.*

The PSR assessed Petitioner with a total offense level of 23, a criminal history category of V, and a recommended Guidelines provision of 84 to 105 months' (8.75 years) imprisonment. *Id.* at ¶¶ 93-94. On October 21, 2019, this Court sentenced Petitioner to 105 months' (8.75 years) imprisonment, followed by two and a half (2.5) years of supervised release. J. of Pet'r, ECF No. 33. Additionally, this Court sentence Petitioner to 30 months (2.5 years) for a supervised release violation to run consecutive to the current term of incarceration. *See* 4:07cr91, J. of Pet'r, ECF No. 20. Petitioner is currently incarcerated at FCI Hazelton Medium with a projected release date of July 7, 2028.[1] Pet'r's Mot. 2. As of the date of this opinion, Petitioner will be released in approximately sixty-nine (69) months and has served approximately one-third of his sentence. *Id.*

On November 27, 2021, Petitioner submitted a Request for Compassionate Release to the Warden of FCI Hazelton Medium. Pet'r's Mot. Ex. 1. On December 15, 2021, the Warden denied Petitioner's request. *Id.* at Ex. 2. Accordingly, on January 26, 2022, Petitioner filed a *pro se* motion for compassionate release. Letter Mot. Compassion. Release, ECF No. 37. On April 4, 2022, Petitioner filed the motion through counsel. Pet'r Mot. On April 19, 2022, the Government responded in opposition. Resp. Opp. On April 25, 2022, Petitioner replied. Pet'r's Reply. At age 48, Petitioner alleges that his obesity, hypertension, and high cholesterol are pre-existing health conditions that are compounded by the current pandemic. Pet'r's Mot. 1. He alleges that his

---

[1] *See also* Federal Bureau of Prisons, "Find An Inmate," *BOP.gov*, https://www.bop.gov/inmateloc/ (last visited Sept. 15, 2022) (listing Petitioner's release date as July 7, 2028).

2

underlying conditions and conditions of confinement make him particularly susceptible to contracting COVID-19. *Id.* at 1-2. Further, he alleges that the sentencing factors under 18 U.S.C. § 3553(a) support compassionate release. *Id.* at 2. Together, Petitioner alleges these circumstances constitute extraordinary and compelling reasons that warrant his release. *Id.* Accordingly, Petitioner requests that the Court grant him compassionate release. *Id.*

## II.   LEGAL STANDARD

### A. The Threshold Requirement

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the Bureau of Prisons ("BOP") bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies."). In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335,

338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the FIRST STEP Act was passed, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

U.S.S.G. § 1B1.13 is now outdated, however, following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *see also United States*

*v. Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020), *reconsideration denied*, No. 15 CR. 457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release . . . [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts . . . ."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive."). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

## III. DISCUSSION

### A. The Threshold Requirement

The Court finds that Petitioner satisfied the threshold requirement. The Government does not contest such. *See* Resp. Opp. On November 27, 2021, Petitioner submitted a Request for Compassionate Release to the Warden of FCI Hazelton Medium. Pet'r's Mot. Ex. 1. On December 15, 2021, the Warden denied Petitioner's request. *Id.* at Ex. 2. On January 26, 2022, Petitioner filed a *pro se* motion for compassionate release. Letter Mot. Compassion. Release. On April 4, 2022, Petitioner filed the motion through counsel. Pet'r's Mot. Thus, more than 30 days passed since Petitioner filed his request.

### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country

have found that compassionate release is justified under the circumstances. *See generally,* *Zukerman,* 2020 WL 1659880, at *4 *citing Perez,* 2020 WL 1546422, at *4; *United States v. Colvin,* 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez,* No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen,* No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez,* 2020 WL 1536155, at *3; *United States v. Muniz,* No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna,* No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. At 48-years old, Petitioner argues that his obesity and hypertension place him at increased risk of serious illness should he contract COVID-19. Pet'r's Mot. 1, 6; *see also* Sealed Bureau of Prisons Med. Rs., ECF No. 38 ("Med. Rs."). According to Petitioner's medical records, he is taking medication for his hypertension. Med. Rs. 2. Additionally, Petitioner has a Body Mass Index ("BMI") of 31.4 kg/m, only slightly over the threshold to be considered obese. Pet'r's Mot. 6. According to the CDC, individuals with obesity (BMI ≥30 kg/m but < 40 kg/m) are more likely to suffer severe illness from COVID-19. [2] The CDC also recognizes that individuals with hypertension might be at an increased risk for severe illness from COVID-19.[3] In addition to preventative measures against COVID-19, the CDC also recommends that individuals with underlying medical conditions follow their treatment plans to keep their medical conditions under

---

[2] *See* Centers for Disease Control and Prevention, "COVID-19: People with Certain Medical Conditions," *CDC.gov,* (last updated Sept. 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. (last visited September 15, 2022).
[3] *Id.*

control and thereby lower their already-increased risk of infection.[4] This Court finds that Petitioner's medical records show that his hypertension and obesity are being properly managed. Med. Res.

Unlike with other cases, the Court here does not need to speculate as to what impact COVID-19 would have on Petitioner's health should he contract COVID-19 because Petitioner reports to have contracted the virus twice. Pet'r's Mot. 19; Letter Mot. Compassion. Release, ECF No. 37. at 8. First in April 2020 and again in December 2021. *Id.* Petitioner reports a lingering cough and congestion from the illness. Pet'r's Mot. 19. After contracting COVID-19 the first time, Petitioner received both doses of the Pfizer-BioNTech COVID-19 vaccine. Pet'r's Mot. 12. He received a Moderna booster after contracting COVID-19 the second time. *Id.* According to the CDC, the COVID-19 vaccine is "effective at preventing COVID-19 as seen in clinical trial settings."[5] Although individuals who are vaccinated may still contract COVID-19, they are significantly less likely to experience severe symptoms or be hospitalized as compared to unvaccinated individuals. *Id.* Petitioner has not reported any side effects to the vaccine and only reported coughing and congestion after contracting COVID-19. Therefore, Petitioner has not provided evidence showing that he is at high risk for serious illness due to COVID-19 which warrant extraordinary circumstances for compassionate release at this time. *See United States v. Madison*, No. 2:17-cr-80, ECF No. 88 (E.D. Va. Mar. 19, 2021).[6]

---

[4] *Id.*

[5] *See* Centers for Disease Control and Prevention, "Ensuring COVID-19 Vaccines Work: Vaccine Effectiveness," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness.html.

[6] Sister jurisdictions have similarly held that because the defendant "has now been fully vaccinated, he simply does not show that he suffers from an extraordinary condition that is terminal or severely limits his ability to function in a correctional setting." *United States v. Burks*, No. 3:14-cr-208-MOC-1, 2021 WL 1394857, at *4 (W.D.N.C. Apr. 13, 2021); *see United States v. Smith*, No. 17-cr-20753, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021), *appeal docketed*, No. 21-1209 (6th Cir. Mar. 2, 2021) ("[A]bsent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A).").

Second, however, Petitioner does show a potential risk of contracting the disease at his prison facility. That is, even though Petitioner if fully vaccinated, there still exists a possibility that he *could* contract COVID-19.  According to the Government, as of April 19, 2022, 0 incarcerated people and 0 staff members at FCI Hazelton Medium were positive for COVID-19 at that time. Resp. Opp., 4. As of September 2022, the BOP has reported a total of 161 recovered positive cases of COVID-19 for incarcerated people (0 current, 3 deaths), 125 recovered cases (0 current) for staff, and only one pending test at FCI Hazelton Medium.[7] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic"). Further, courts have recognized that as prison conditions get harsher, sentences should get shorter. *See United States v. Spano*, 476 F.3d 476, 479 (7th Cir. 2007) (finding merit to the argument that "the harsher the conditions, the shorter the sentence should be.").

Third, overall, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remains unchanged. As detailed in the PSR, Petitioner has had repeated violations of criminal law. PSR, ECF No. 35.

---

[7] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/ (last visited Sept. 15, 2022).

Overall, the PSR attributed Petitioner with 2,752 grams of cocaine. *Id.* at ¶ 9. To date, Petitioner has served approximately one third of his 135-month sentence. Accordingly, early release would not provide adequate deterrence or punishment for his offense. *See United States v. Hill*, No. 3:14cr114, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020) (denying compassionate release where the defendant had "served only 40% of his 188-month sentence, which may not afford adequate deterrence to his criminal conduct"). Petitioner also has an extensive criminal record with his first offense at age fourteen. PRS at ¶ 26. As an adult, Petitioner was arrested for various crimes including but not limited to drug possession, drug distribution, robbery, and assault. *Id.* at ¶¶ 29-51. Based on his criminal record and supervised release violation, the Court finds that Petitioner has a poor history of changing his behavior.

To his credit, Petitioner has not received a disciplinary infraction under this current term of incarceration. Pet'r's Mot., at Ex. 4. The Court also notes that there has been limited programming available due to COVID-19 lockdowns. Despite that, Petitioner has completed one drug education program and started another. *Id.* at Ex. 5. However, as noted by sister courts, a "defendant's rehabilitation alone proves insufficient to warrant a sentence reduction." *See United States v. Woolridge*, No. 3:09CR156 (DJN), 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021); *see also United States v. Ahmad*, No. 1:11-cr-554-TSE, ECF No. 75 (E.D. Va. Apr. 8, 2021) (finding that the defendant's coursework did not support compassionate release, reasoning that "[i]t is not uncommon for a defendant to take educational classes to pass the time in prison").

Additionally, Petitioner argues that he would be safer from COVID-19 at home. He argues that, unlike FCI Hazelton Medium, at home he would be able to care for his well-being and safety. Pet'r's Reply, 10. Moreover, in his release plan, Petitioner outlines his strong ties with his family and strong support within his community. Pet'r's Reply, 13. With this, he has secured housing and

employment. *Id.* Petitioner plans to reside with a family friend and work at her business, an establishment he has helped at before becoming incarcerated. *Id.* However, while Petitioner argues that he will be safer in the community and articulates a release plan, the Court is not persuaded that the community will be safer if the Petitioner is released immediately. Petitioner's plan does not adequately protect the public or protect against recidivism.

Lastly, Petitioner asks the Court to consider the historical inequities in crack cocaine sentencing in determining whether compassionate release is warranted in this instance. Pet'r's Mot. at 21-23.[8] Petitioner was originally sentenced for a crack offense in 2007. *See* No. 4:07-cr-91, J. of Pet'r, ECF No. 20. He previously applied for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) twice. *See* No. 4:07-cr-91, Mot. for Retroactive App. of Sent. Guidelines to Crack Cocaine Offense, ECF No. 21; No. 4:07-cr-91, Mot. to Reduce Sent., ECF No. 49. Both of those motions were denied because Petitioner's designation as a Career Offender made him ineligible for relief. *See* No. 4:07-cr-91, Order Denying Mot. to Reduce Sent. Crack Cocaine Offense., ECF No. 24; No. 4:07-cr-91, Order Denying Mot. to Reduce Sent., ECF No. 57. Given that Petitioner continued to distribute cocaine while on supervised release from his 2007 conviction leading to the underlying offense in this case, the Court finds no reason to reduce Petitioner's sentence based on historical inequities in crack cocaine sentencing.

Overall, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor and his release would not promote the respect for law or provide adequate deterrence. Critically, Petitioner did not show extraordinary or compelling reasons for release due to COVID-19. Therefore, Petitioner does not qualify for compassionate release.

---

[8] Petitioner is not requesting relief under § 404 of First Step Act of 2018 at this time. Pet'r's Mot, 22.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for Compassionate Release, ECF No. 43, is **DENIED.**   Furthermore, Petitioner's *pro se* Motion for Compassionate Release, ECF No. 37, is **Moot**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Newport News, Virginia
September 20, 2022

UNITED STATES DISTRICT JUDGE

11